IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
NORTHERN DIVISION

No. 2:07-M-1075-BO

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | O R D E R |
| | ) | |
| VASILE MATEI, | ) | |
| | ) | |
| Defendant. | ) | |

This case was tried before the undersigned as a criminal trial on July 16, 2007, at the regular criminal term of United States District Court at Elizabeth City, North Carolina. The Defendant, a resident of Virginia, was charged with operating a vehicle without due care on the Cape Hatteras National Seashore ("CAHA").

The alleged violation occurred on the afternoon of May 27, 2007, a Sunday, and the mid-holiday day of the Memorial Day weekend. Testimony at trial included that of a United States Park Ranger, on duty at the time and location of the violation. The testimony established that there was traffic on a narrow strip of sand extending from the ramp in the vicinity of the Oregon Inlet Fishing Center, south and east along the oceanfront beach in the direction of Oregon Inlet, which is an open body of water connecting the Atlantic Ocean with the Albemarle, Pamlico, Croatan, and Currituck Sounds, through a tidal inlet. The area, consisting of sand dune and tidal beach, is characterized by a narrow passage along the beach south of the entry ramp and an expanding area of accreted sand. Since the construction of the high rise bridge on Highway 12 across Oregon Inlet linking the south end of Bodie Island with the north end of Pea Island, the

1

areas had developed irregularly. All of the land on the south side of Bodie Island is within the National Seashore.

This particular area is characterized as a fragile transitional over-wash area, which has historically been a valuable and declining resource for endangered shorebirds and turtles. In recent seasons, there have been extensive bird enclosure areas located throughout this area, and turtle nesting has traditionally taken place in this area. *See generally,* NATIONAL PARK SERVICE, PIPING PLOVER (CHARADRIUS MELODUS) MONITORING AT CAPE HATTERAS NATIONAL SEASHORE, 2006 ANNUAL REPORT (2006), *available at:* http://www.nps.gov/caha/naturescience/upload/2006%20PIPL%20Final%20Report-2.pdf [hereinafter PIPING PLOVER ANNUAL REPORT]; NATIONAL PARK SERVICE, CAPE HATTERAS NATIONAL SEASHORE 2006 SEA TURTLE ANNUAL REPORT (2006), *available at:* http://www.nps.gov/caha/naturescience/upload/2006%20Sea%20Turtle%20Final%20Report.pdf [hereinafter SEA TURTLE ANNUAL REPORT].

The testimony at trial established that United States Department of Interior pilots with the Park Service made an overflight on May 27 and counted approximately 1,200 vehicles located in the over-wash area. Because camping overnight is prohibited, all of the traffic was in transit at some point on the date of the violation. The Court takes judicial notice that at a minimum one occupant per vehicle was at the scene. Further, it is reasonably expected that there were two or more persons per vehicle in such a recreational setting, making between 2,500 and 5,000 people a reasonable estimate of the number of people crowded onto this narrow, fragile, environmentally sensitive area on the Sunday of Memorial Day weekend.

On the date and time of the violation, Defendant attempted to drive a large four-wheel drive vehicle off the beach and into an area adjacent to the dunes, ultimately intending to exit on

2

the ramp. Because of the high volume of traffic resulting in degradation of the beach, there were deep ruts in the sand, some being feet in depth. Operating a vehicle in these conditions, only feet from with sun bathers, families and children on the beach creates a serious hazard for injury or death. The evidence at trial demonstrated that Defendant drove at a speed dangerous for conditions, traveling in an erratic and serpentine manner through the ruts in the sand causing spray of sand and danger to people on the beach. Defendant was cited for this behavior failing to drive with due care. After a hearing the evidence, the Court found beyond a reasonable doubt that the violation had been established.

By executive order, President Nixon required that the Department of the Interior publish regulations defining specific trails and areas for the use of off-road vehicles "(ORV"). Exec. Order No. 11,644, 37 C.F.R. § 2877 (1972), *as amended by* Exec. Order No. 11,898, 42 Fed. Reg. 26,959 (May 24, 2977). The regulations to designate which areas are open to ORV traffic must promote safety for all users, minimize damage to public lands and wildlife, and take into consideration endangered or threatened species. 43 C.F.R § 8342.1. The designation process must include public participation, and include local landowners and other interested parties. *Id.* § 8342.2. Once a plan is approved, areas and trails must be clearly identified so that the public will be aware of the applicable limitations. *Id.* Operating a motor vehicle is prohibited except where the Park Service has specifically designated that ORV use is permitted, in accordance with the aforementioned regulations. 30 C.F.R. § 4.10; 18 U.S.C. § 3571. Thus, where the Park Service fails to create a plan for ORV use, ORV is prohibited.

CAHA does not have regulations in place to govern ORV traffic. Consequently, it is also a violation to operate a motor vehicle on Cape Hatteras National Seashore without prior authority

3

and is punishable by up to $5,000.00, six months in prison, or both. 18 U.S.C. § 3571. By permitting unregulated ORV traffic on CAHA, Defendant and others come dangerously close to accidents with pedestrians including children. Indeed, ORV traffic directly impacts attempts to protect endangered species from human encroachment. From April 1 to August 31, 2006, the Park Service recorded 47 ORV violations of barricaded closures for bird nesting areas. PIPING PLOVER ANNUAL REPORT 9. As the home to five species of sea turtles, two of which are threatened and three of which are endangered, 23 ORV violations of sea turtle closed areas were recorded in the 2006 season. SEA TURTLE ANNUAL REPORT 11-12. Although the impact of ORV traffic on endangered species and risk to pedestrians is yet unmeasured, without an ORV plan in place, the Park Service is without the manpower to enforce many of the rules in place on heavily trafficked days like that of the date of violation. Accordingly, it is a violation to operate an ORV on CAHA without authority from the Department of the Interior or its designee, and Defendant must pay $100 fine and special assessment.

SO ORDERED, this __17__ day of July, 2007.

TERRENCE W. BOYLE
UNITED STATES DISTRICT JUDGE

4